## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                        **NO. 12-141**

**LAMAR NERO and**                               **SECTION: "G"(3)**
**MYRON SAUNDERS**

## ORDER AND REASONS

After a six-day jury trial beginning on June 24, 2013 and concluding on July 1, 2013, Defendants Lamar Nero ("Nero") and Myron Saunders ("Saunders") (collectively, "Defendants") were found guilty of conspiracy to commit bank robbery (Count 1), bank robbery of Chase Bank and assault or putting in jeopardy the life of another by the use of a firearm in committing the offense (Count 2), using or carrying a firearm during and in relation to a crime of violence (Count 3), bank robbery of Fidelity Bank (Count 4), and attempted bank robbery of Chase Bank (Count 6).  They were both acquitted of Count 5, the attempted bank robbery of Regions Bank.[1]

Presently before the Court is a "Motion for New Trial,"[2] wherein the Defendants request that this Court vacate their convictions with respect to Counts 1-4 and 6 of the Indictment, and grant them a new trial pursuant to Federal Rule of Criminal Procedure 33. After considering the pending motion, the memorandum in support, the opposition, the reply, the record, the arguments made before the Court on October 17, 2013, and supplemental memoranda, the Court's perception and observation of the events at trial, and the applicable law, the Court will deny the motion for new trial.

---

[1]  Rec. Doc. 134-3, Jury Verdict Form.

[2]  Defendants have each filed a separate motion for new trial. However, the motion and memoranda in support are identical, apart from name of the moving party. *See* Rec. Doc. Nos. 139, 140. Therefore, the Court will consider the separate motions as one. Defendants have filed other identical pleadings which will likewise only be addressed once.

## I. Background

### A. Factual Background

An indictment was filed, on March 23, 2012, charging Defendants with six separate counts: Count 1 - conspiracy to commit bank robbery; Count 2 - bank robbery of Chase Bank and assault or putting in jeopardy the life of another by the use of a firearm in committing the offense on or about June 24, 2011; Count 3 - using or carrying a firearm during and in relation to a crime of violence; Count 4 - bank robbery of Fidelity Bank on or about November 5, 2011; Count 5 - attempted bank robbery of Regions Bank on or about December 10, 2011; and, Count 6 - attempted bank robbery of Chase Bank on or about December 24, 2011.[3] Voir dire commenced on June 24, 2013. After a jury of twelve[4] was empaneled, the Court issued its preliminary instructions to the members of the jury.[5] The government began presenting its case-in-chief on June 25, 2013.[6] After introducing evidence and calling witnesses, the government rested its case on July 1, 2013. The Defendants cross-examined the Government's witnesses but rested their defense without introducing evidence or calling any witnesses on their own behalf.

As per the Court's trial preparation order,[7] Defendants and the Government had previously

---

[3] *See* Rec. Doc. 8 (indictment).  A superseding bill of information was filed subsequent to a notice of re-arraignment, but the arraignment on the bill was canceled after the defendant Nero would not sign a waiver of indictment. Trial proceeded on the original indictment. *See* Rec. Doc. 78 (superseding bill of information) and Rec. Doc. 80.

[4] The Court also empaneled two alternate jurors.

[5] *See* Rec. Doc. 144.

[6] *Id.* at p. 21.

[7] Rec. Doc. 96.

submitted proposed jury instructions and verdict forms to the Court.[8] At the charge conference, the Court handed out its own draft of the jury instructions and verdict form, which combined elements of all the parties' proposals, and allowed counsel to comment.[9] After resolving issues concerning the jury instructions, the Court turned to its draft verdict form, and gave the parties an opportunity to read and comment upon it as well.[10] The Court addressed and noted for the record the parties' minor objections to the draft verdict form – none of which are at issue in this motion – and concluded the charge conference.[11]

The Court read the jury instructions to the jury and began to read the verdict form. However, considering that the verdict form was displayed on a large screen in the courtroom as well as on individual monitors in the jury box and on counsels' tables, the Court asked the parties if it should continue reading the verdict form out loud; all agreed it was unnecessary for the Court to continue. The jury was then sent to deliberate. With the agreement of the parties, the Court gave each member of the jury a printed copy of its jury instructions and preliminary instructions to take with them during deliberations, and one copy of the verdict form was provided to the jury as a whole. The jury returned that evening, on July 1, 2013, with a unanimous verdict on all six counts. The jury found Defendants guilty of Counts 1-4 and 6.[12] However, the jury found Defendants not guilty with respect to Count 5, which charged Nero and Saunders with the attempted bank robbery of Regions Bank on

---

[8]  Rec. Doc. 106 (United States' proposed jury instructions); Rec. Doc. 107 (United States' proposed verdict form); Rec. Doc. 126 (Nero's proposed jury instructions); Rec. Doc. 127 (Nero's proposed verdict form); Rec. Doc. 128 (Saunders adopting Nero's proposed jury instructions and verdict form).

[9]  *See generally* Rec. Doc. 145.

[10]  *Id.* at p. 19:4-5

[11]  *Id.* at p. 35:14-22.

[12]  Rec. Doc. 134-3 (verdict form).

or about December 10, 2011.[13]

## B. Procedural Background

Defendants filed their motions for new trial on July 15, 2013.[14] The United States filed an opposition on August 22, 2013.[15] Defendants filed a reply on August 30, 2013.[16] The Court heard oral argument on the pending motion on October 17, 2013.[17]  On October 18, 2013, the Defendants each filed a supplemental memorandum in support of new trial and the Government filed a response memorandum.[18]  Nero and Saunders each filed a response to this Court's order[19] on October 23, 2013.[20]

## II. Parties' Arguments

## A. Defendants' Arguments in Support of New Trial

In the pending motion, Defendants seek relief pursuant to Federal Rule of Criminal Procedure 33.[21] Defendants claim that their due process rights were violated by virtue of the language used on the verdict form[22] and by portions of the United States' closing arguments, "when

---

[13] *See id.* at p. 3.

[14] Rec. Docs. 139 (Nero) and 140 (Saunders).

[15] Rec. Doc. 157.

[16] Rec. Doc. 162.

[17] Rec. Doc. 169.

[18] Rec. Docs. 168, 171 and 172.

[19] Rec. Doc. 170.

[20] Rec. Docs. 173 and 174.

[21] Rec. Doc. 140-1 at p. 1.

[22] Each of the interrogatories in the jury verdict form contained the phrase, "As to the charges set forth in Count _____, we the Jury unanimously find *beyond a reasonable doubt* that the defendant, _____, is

4

the prosecutor asserted his personal opinion regarding the credibility of a witness, and when he spoke directly to the defendants in a manner that incited the passion of the jury."[23]

With regard to the verdict form, Defendants incorrectly claim that the Court "rejected" Defendants' proposed verdict form, and instead submitted the government's "flawed" verdict form to the jury.[24] Defendants argue that the verdict form was improper because it "required the jury to unanimously find beyond a reasonable doubt that [Defendants] w[ere] not guilty to acquit [them]."[25] Defendants acknowledge that the Court properly "instructed the jury that the Government had the burden to prove guilt," but claims "that did not cure the obvious error that was repeated 12 times in the verdict form."[26]

Noting the United States Supreme Court's decision in *Weeks v. Angelone*,[27] Defendants concede that juries are presumed to follow the Court's instructions, but argue that "the jury may not be assumed to have disregarded the verdict form and followed the correct instruction, especially given that the verdict form repeated the incorrect instruction twice for each of the six counts."[28] Defendants contend that the verdict form violated their constitutional rights because it improperly shifted the burden off the Government and deprived Defendants of the reasonable doubt standard,

---

____Not Guilty, ____Guilty."  (See Rec. Doc. 134-3) (emphasis added).

[23] Rec. Doc. 140-1 at p. 2.

[24] *Id.* at p. 3.

[25] *Id.*

[26] *Id.*

[27] 528 U.S. 225 (2000).

[28]  Rec. Doc. 140-1 at pp. 3-4. The instructions on the verdict form were listed twice as there were two defendants charged in each count.

"'a prime instrument for reducing the risk of convictions resting on factual error.'"[29] Further, Defendants maintain that the verdict form seriously affected the "fairness, integrity, and public reputation of judicial proceedings," and therefore "the interest of justice requires [Defendants] be granted a new trial on the counts of conviction in which the jury [was] properly [sic][30] instructed that it may [not] acquit [Defendants] without first having to find [them] not guilt [sic] beyond a reasonable doubt."[31]

Next, Defendants note that an improper prosecutorial argument can warrant a new trial.[32] Specifically, Defendants argue that during rebuttal argument, Assistant United States Attorney ("AUSA") Harry William McSherry placed his personal opinion before the jury and attempted to bolster the witness's testimony by "stamping the imprimatur of the United States of America onto its theory of the case."[33] Specifically, Defendants cite this language by AUSA McSherry:

> I don't believe that Ms. Alvis was correct. . . . Ms. Alvis was wrong about her date, but I know this. I know Ms. Alvis wasn't wrong about Lamar [Nero] over there with the jacket on with the sheriff's insignia because Ms. Lewis saw it also in November.[34]

Defendants contend that under Fifth Circuit precedent, a prosecutor may not state to the jury his belief that his witness was telling the truth.[35] Defendants aver that this statement "impinges on the jury's function of determining the guilt or liability of the defendant[s]," and "injects into the case

---

29 *Id.* at p. 4 (quoting *In re Winship*, 397 U.S. 358, 363 (1970)).

30 The Court assumes Defendants meant "improperly."

31 *Id.*

32 *Id.* at p. 5 (citing *United States v. Dorr*, 636 F.2d 117 (5th Cir. Unit A Feb. 1981)).

33 *Id.* at p. 6.

34 *Id.* (citing Rec. Doc. 140-2 at pp. 11-12).

35 *Id.* (citing *United States v. Morris*, 568 F.2d 396, 402 (5th Cir. 1978)).

irrelevant or inadmissible matter or facts not legally produced into evidence."[36] Further, Defendants

contend that:

> Not only was the statement made by the prosecutor during his rebuttal argument
> improper, but it prejudiced [Defendants'] substantial rights.  Ms. Alvis testified that
> she saw [Defendants] on November 5, 2011, when he was supposedly across town
> robbing Fidelity bank.  By inserting his personal belief into the trial evidence and
> assuring the jury that "we know" that the witness was mistaken, the prosecutor
> helped to secure [Defendants'] conviction on the November 5 robbery of Fidelity
> bank charged in Count 4.[37]

Defendants argue that where an improper prosecutorial statement prejudiced the substantial rights

of a defendant, a new trial is constitutionally required.[38]

Additionally, Defendants allege that "the prosecutor, in an attempt to appeal to the passions

of the jury, addressed the defendants personally numerous times all while making aggressive hand

gestures."  Defendants argue that the Fifth Circuit has instructed that prosecutors may not appeal to

the passion or prejudice of the jury in an attempt to inflame them.[39]

Finally, Defendants invoke the cumulative error doctrine, whereby an aggregation of non-

reversible errors can yield a denial of the constitutional right to a fair trial.[40] Without further

explanation, Defendants simply state that they are entitled to a new trial under this doctrine.[41]

### B. United States' Opposition to New Trial

In opposition to the pending motion, the United States highlights that during the preliminary

---

[36] *Id.* at p. 7.

[37] *Id.* at p. 8.

[38] *Id.* (citing *United States v. Shaw*, 701 F.2d 367, 390 (5th Cir. 1983)).

[39] *Id.* at p. 7 (citing *United States v. Raney*, 633 F.3d 385, 395 (5th Cir. 2011)).

[40] *Id.* at p. 8 (citing *United States v. Valencia*, 600 F.3d 389, 429 (5th Cir. 2010)).

[41] *Id.*

jury instructions, the jury was charged "at least eight different times that the burden of proof to prove the defendants guilty beyond a reasonable doubt is on the government, at least twice that the law imposes no burden on the defendant to prove anything and that the defendant is presumed innocent until proven guilty."[42] The United States notes that, during the charge conference, the verdict form was discussed and counsel for Defendants did not lodge the objections they now raise.[43]

The United States recounts AUSA Paige's closing arguments, where he summarized much of the evidence and testimony, and with respect to Ms. Alvis' testimony, stated that "it's for you to decide whether or not she had seen them before, whether it was earlier or later that morning or another day in November."[44] The United States argues that in response, Mr. Capitelli, counsel for Saunders, "directly addressed the accuracy of Ms. Alvis' testimony and that of other eyewitnesses, suggesting that the testimony of one or the other could not be believed," because they had contradictory accounts of where Defendants were on a specific date.[45] The government also notes that Mr. Capitelli reminded the jury in his closing argument several times that the government always bears the burden of proof in criminal matters.[46]

Moreover, the government recounts that Mr. Chaney, counsel for Nero, also reminded the jury that the United States must prove guilt beyond a reasonable doubt at all times.[47] The United States argues that Mr. Chaney spent a significant portion of his closing statement "attempting to

---

[42] Rec. Doc. 157 at pp. 1-3 (citing Rec. Doc. 144 at pp. 5-6, 8-9, 11, 12, 14, 15, 18, 19).

[43] *Id.* at p. 4.

[44] *Id.* at pp. 5-7.

[45] *Id.*

[46] *Id.* at p. 8 (citing Rec. Doc. 146 at pp. 20, 26, 27).

[47] *Id.* (citing Rec. Doc. 146 at pp. 27-28).

discredit the testimony of Jaresa Alvis."[48] Therefore, the United States argues that AUSA McSherry attempted to rehabilitate the Government's case by referring to evidence and testimony admitted into the record.[49]

The United States emphasizes that, after closing arguments, the Court provided its final instructions to the jury, and again cautioned "no less than 11 times that the government bears the burden of proof beyond a reasonable doubt."[50] In addition, the United States highlights that the Court explained the verdict form to the jury, without defense counsel ever raising an objection.[51]

With respect to the verdict form, the United States first points out that, since no objection was made during trial, the Fifth Circuit would review any alleged error only for plain error, which it claims Defendants cannot establish here.[52] Further, the United States maintains that verdict forms do not have the impact of jury instructions, and that Defendants have "produced no case law pertaining to verdict forms" but instead have analogized verdict forms to jury instructions.[53] The United States argues that "[v]erdict forms are regarded as a method of recording a jury's findings, not a means of guidance for directing those findings."[54] In support of this proposition, the United States cites language from the United States Court of Appeals for the Tenth Circuit's decision in

---

[48] *Id.* at p. 9.

[49] *Id.* at pp. 10-12.

[50] *Id.* at pp. 12-13 (citing Rec. Doc. 147 at p. 4, 5, 11, 13, 16, 20, 21, 22, 24, 25, 27, 28).

[51] *Id.* at pp. 13-14.

[52] *Id.* at p. 17 & n. 3 (citing *United States v. Olano*, 507 U.S. 725, 730 (1993)).

[53] *Id.* at p. 18.

[54] *Id.*

*United States v. Overholt*,[55] wherein the court stated:

> The purpose of the verdict form is not to repeat the elements of the offense. The language on the form serves only to identify where the jury should indicate its verdict on each count. . . . The jury could not possibly have been misled into believing that it could ignore the elements instruction.[56]

The United States compares the verdict form here to that used in *United States v. McKay*,[57] where the defendant argued that the verdict form suggested a preferred verdict of "guilty" by listing it before "not guilty," allegedly violating the presumption of innocence. The Fifth Circuit rejected this argument, reasoning that "[t]he district court thoroughly instructed the jury on the use of the form, and the polling immediately following delivery of the verdict confirmed the jury's unanimity on both counts," and therefore the defendant's challenge was facially frivolous.[58] The United States claims that here the "phraseology in the verdict form did not impact the jury," because "the record is replete with the Court's clear, correct, unambiguous, and repeated instructions that the law places no burden on the defendants to prove anything or to produce any evidence and that if the government fails to meet its burden of proof, the defendants must be found not guilty."[59]

Further, the United States argues that any confusion created by the verdict form was cured by the jury instructions.[60] The government reiterates the numerous instructions provided by the Court indicating that the United States bore the burden to prove its case beyond a reasonable doubt,

---

[55]  307 F.3d 1231 (10th Cir. 2002).

[56]  *Id.* at 1249.

[57]  15 F.3d 179, 1994 WL 24887 (5th Cir. 1994) (unpublished). While unpublished, this decision is still binding precedent. *See* 5th Cir. R. 47.5.3 ("Unpublished opinions issued before January 1, 1996, are precedent.").

[58]  *Id.* at *1.

[59]  Rec. Doc. 157 at p. 20.

[60]  *Id.* (citing *United States v. Thompson*, 253 F.3d 700, 2001 WL 498430, at *10 (5th Cir. 2001) (unpublished)).

not Defendants. The United States relies on *United States v. Jones*,[61] where the Fifth Circuit held that despite ambiguities in the verdict form, any confusion was clarified when considered in light of the entire jury instructions. The government also notes that the Fifth Circuit has acknowledged that when a jury convicts on some counts, and acquits on others, as happened here, it has been interpreted as supporting an inference that the jury sorted and considered all of the evidence.[62]

Moreover, the United States argues that even where a jury charge constitutes plain error, Defendants are not entitled to the relief they seek unless their substantial rights were affected.[63] The Government relies on *United States v. Phipps*,[64] where, despite the district court's one inadvertent instruction that the "preponderance of the evidence" standard applied, the court found there was no reasonable likelihood that the jury incorrectly applied the law as the instructions were correctly given on this same point of law 15 times.[65] Also, the United States argues, Defendants put forward no evidence of actual juror confusion, but rather only offer speculation.[66]

In response to Defendants' challenge to allegedly improper prosecutorial remarks, the United States notes that in determining whether such remarks affected a defendant's substantial rights, a court must consider: "(1) the magnitude of the prejudicial effect of the statements; (2) the efficacy of any cautionary instructions; and (3) the strength of the evidence of defendant's guilt."[67] The

---

[61] 132 F.3d 232 (5th Cir. 1998).

[62] Rec. Doc. 157 at p. 22 (citing *United States v. Acosta*, 763 F.2d 671, 697 (5th Cir. 1985)).

[63] *Id.*

[64] 319 F.3d 177 (5th Cir. 2003).

[65] Rec. Doc. 157 at p. 22.

[66] *Id.* at p. 23.

[67] *Id.* at p. 24 (citing *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004)).

United States also notes that the Fifth Circuit has recently stated that "[w]hen analyzing the impropriety of prosecutorial comments, the central issue for this court is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict. This step sets a high bar."[68]

In addition, the United States contends that "'[t]he test for improper vouching for the credibility of a witness is whether the prosecutor's expression might reasonably lead the jury to believe that there is other evidence, unknown or unavailable to the jury, on which the prosecutor was convinced of the accused's guilt,'" and that personal vouching or bolstering of the credibility of a government witness by a prosecutor is not error unless the prosecutor invokes "'the sanction of the government itself as the basis for convicting a criminal defendant[,]' provides no supporting evidence in the record for his assertion, and leaves the jury with the distinct impression that the vouching is based on information personal to the prosecutor that is not part of the trial record."[69] The United States avers that:

> A review of the entirety of the testimony in the case and the closing arguments establishes that the government's rebuttal argument was a fair response to attacks on the credibility of a crucial government eyewitness and amounted to explanation of the evidence which corroborated her testimony, not improper prosecutorial vouching. Furthermore, there was no objection to the rebuttal argument either contemporaneous with or immediately after the argument, so on appeal plain error review will apply. Given the evidence presented at trial, the defendants' closing arguments, and the argument itself which amounted to a review of corroborating evidence, defendants' substantial rights have not been affected and they are not entitled to a new trial.[70]

The United States further argues that:

> In the instant case, the prosecutor's comments merely cited evidence which

---

[68] *United States v. Reagan*, – F.3d –, 2013 WL 3967991, at *16 (5th Cir. Aug. 2, 2013) (internal quotation marks omitted).

[69] *Id.* at p. 25 (quoting *United States v. McCann*, 613 F.3d 486, 495 (5th Cir. 2010)).

[70] *Id.*

corroborated the eyewitness's testimony and was responsive to repeated defense closing argument attacks on her testimony. The prosecutor did not personally vouch for her truthfulness and his statements were not inflammatory or prejudicial. Moreover, this Court issued cautionary instructions to the jury that the argument of counsel was not to be considered evidence in the case. (Doc. 147, p. 5). The evidence presented by the prosecution in this case, as discussed earlier, was prolific and unambiguous in supporting the convictions of the defendants.[71]

The United States also contends that "defendants' closing arguments invited the prosecution's response."[72] The government maintains that in his closing statements, Mr. Capitelli claimed that Ms. Alvis' testimony was impacted by fear which affected her amygdala and limbic system, triggering her "lizard brain."[73] The government contends in making these statements Mr. Capitelli was improperly acting as an "expert witness," and that AUSA McSherry's comments were in response to that claim. The United States cites *Lawn v. United States*,[74] claiming that there the Supreme Court held that similar comments by a prosecutor are not error when such a response was invited by the defendant.[75] Further, the Government avers that:

> In his discussion of Alvis' testimony, the prosecutor repeatedly referred to evidence and testimony which had been presented through other witnesses in the trial. For example, the prosecutor stated, "I know Ms. Alvis wasn't wrong about Lamar over there with the jacket on with the sheriff's insignia because Ms. Lewis saw it also in November." (Doc. 146, p. 49). When viewed in the context of the entire trial and particularly in the light of defense closing, this was plainly not a personal opinion on Ms. Alvis' truthfulness, but rather a reference to other pieces of evidence which supported her testimony. Four witnesses testified to the presence of the Sheriff's coat referred to by the prosecutor.

Such argument, when it is within the scope of rebuttal and refers specifically to

---

[71] *Id.* at p. 26.

[72] *Id.* at p. 27.

[73] *Id.* (citing Rec. Doc. 147 at p. 35).

[74] 355 U.S. 339, 359 (1958).

[75] Rec. Doc. 157 at p. 28.

matters already in evidence, has been deemed proper by the Fifth Circuit for decades.
'The prosecutor may refer to matters that are in evidence, and he may even present
what amounts to a bolstering argument if it is specifically done in rebuttal to
assertions made by defense counsel in order to remove any stigma cast upon him or
his witnesses.'[76]

Finally, the United States rejects that AUSA McSherry inflamed the passions of the jury,
arguing that gestures and using first names do not rise to this level.[77] The government maintains that
AUSA McSherry used no unduly prejudicial or inflammatory language to warrant the relief
Defendants seek.[78] Lastly, the United States argues that Defendants' "have failed to explain their
miscarriage of justice claim in light of the jury's verdict of acquittal [as to Count 5]. The Fifth Circuit
has repeatedly indicated that a verdict of acquittal on a count in a multi-count indictment
underscores that no potential bias or error infected the deliberation processes and the fairness of the
verdict."[79]

### C. Defendants' Reply

In reply, Defendants attempt to refute the United States' reliance on the Tenth Circuit's
decision in *Overholt* to claim that the verdict form could not have led to jury confusion. In contrast
to the verdict form in *Overholt*, Defendants claim, here their complaint "is based on an actual error
in the verdict form."[80] Defendants further claim that the Supreme Court has applied the law
governing jury instructions when reviewing errors in jury decision or verdict forms.[81]

---

[76] *Id.* at pp. 29-30 (quoting *Dorr*, 636 F.2d at 120).

[77] *Id.* at p. 30.

[78] *Id.* at p. 32.

[79] *Id.* & n. 10 (citing *United States v. Arledge*, 553 F.3d 881, 896 (5th Cir. 2008)).

[80] Rec. Doc. 162 at p. 2.

[81] *Id.* at p. 3 (citing *Jones v. United States*, 527 U.S. 373, 384, 386 n. 7, 393-95 (1999)).

Defendants also refute the United States' contention that the jury instructions themselves cured any alleged defect or ambiguity in the verdict form:

> The Government argues that correct statements of the law in the jury instructions cured the defect in the verdict form.  Few of the many instructions on which the Government relies, however, directly contradict the error on the verdict form.  An attorney would of course understand the inference that the Government draws from instructions assigning the Government the burden of proof, explaining the reasonable doubt requirement for a guilty verdict, and explaining the presumption that the defendant is innocent—namely, that a finding beyond a reasonable doubt is not necessary to return a verdict of 'not guilty.'  But how would jurors untrained in the law know that?[82]

Further, Defendants argue that they need only show that there was a "reasonable likelihood" that the jury applied the law in an unconstitutional manner to warrant relief.[83] Defendants argue that the cases against them were based on their association with one another and circumstantial evidence.[84] Moreover, Defendants argue that the United States' assertion that their claims are based on "speculation" imposes an impossible burden, because Federal Rule of Evidence 606(b) bars juror testimony on such issues as would be relevant here.[85]

Turning back to AUSA McSherry's rebuttal statements, Defendants' argue that "bolstering is different from vouching."[86] Defendants' contend:

> Here, the prosecutor's argument—that Ms. Alvis's testimony should be understood as correctly recalling that Mr. Nero was standing outside the Chase Bank in Gentilly but as mistaken regarding the date (November 5th—when the Government contends Mr. Nero was robbing the Fidelity bank in Metairie)—was expressly based on the prosecutor's personal knowledge:

---

[82] *Id.* at pp. 3-4.

[83] *Id.* at p. 5 (citing *Phipps*, 319 F.3d at 190).

[84] *Id.*

[85] *Id.* at pp. 7-8 (citing *United States v. Jones*, 132 F.3d 232, 245-46 (5th Cir. 1998), *aff'd*, 527 U.S. 373 (1999)).

[86] *Id.* at p. 9.

I love the November 5 deal where you can't have two things happen at the same time. Well, you know what? We don't have perfect witnesses. *I don't believe* that Ms. Alvis was correct, but *I do know* this. None of these people are charged with robbing the Chase Bank on November 5.

You're charged with robbing the Fidelity of $59,000 on November 5. *I know* there's a videotape that shows you guys and Furnell inside that bank, and *I know* there's a videotape that shows the white van that day, so *I know my eyes don't misperceive me.*

That's the bank robbery that we are talking about. So to say, "Oh, well, it couldn't have happened because of November 5, Ms. Alvis says that these guys were there, at a different spot," *we know where they were for a fact* with physical evidence, with videotape. *I think* Ms. Alvis was wrong about her date, but *I know this. I know* Ms. Alvis wasn't wrong about Lamar over there with the jacket on with the sheriff's insignia because Ms. Lewis saw it also in November.

. . . .

So we don't have to think that Ms. Alvis was hallucinating in November. *We just know* that she probably is talking about the wrong day because *we know* he was in that sheriff's jacket. We saw him four times.

At other points in his rebuttal, the prosecutor again insisted, "*I know*" why a witness would deny having implicated a defendant and, "*We know* what happened that day."

The prosecutor went beyond defending Ms. Alvis from defense counsel's assertion—based on common sense—that fear colored her recollection. The prosecutor asserted to have personal knowledge from which he concluded that Ms. Alvis was right on the identification but mistaken on the date.[87]

Defendants argue that this "error" was compounded by AUSA McSherry pointing at the defendants and asking:

Why would *you* lose 40 pounds? The same reason that *you* would conceal a van after it's been discovered because *you* would conceal *yourself* after *you* know *you* have

---

[87] *Id.* at pp. 9-10 (internal footnotes omitted) (emphasis and ellipses added in Defendants' memorandum).

been identified because *you* didn't wear a mask on June 24, *you* didn't wear a mask on November 5, *you* didn't wear a mask on December 10.  So that's why *you* grow a beard and you lose 50 pounds.[88]

Defendants argue that this was error because it "underscored the notion that the prosecutor's argument regarding how the pieces of evidence fit together was based on his own personal knowledge of the facts."[89] Defendants argue that this alleged error was particularly prejudicial with regard to Count 4: "Ms. Alvis testified that she saw [Defendants] in the Gentilly area of New Orleans on November 5th.  By assuring the jury that 'we know' that the witness was mistaken, the prosecutor helped to secure [Defendants'] conviction[s] on the November 5th robbery of Fidelity bank in Metairie on the same date."[90]

Finally, Defendants re-urge their claim that relief should alternatively be granted under the cumulative error doctrine:

> The error in the verdict form restraining the jury from returning a not-guilty verdict apart from a finding beyond a reasonable doubt was made worse by the improper arguments against a finding of not guilty, especially as to Count 4.  Similarly, the erroneous verdict form made it more likely that the jury declined to return a not-guilty verdict in light of the prosecutor's improper argument.[91]

### D. Supplemental Briefing by the Parties

In a Supplemental Memorandum in Support of New Trial filed on October 23, 2013, Defendants argue that "plain error" review does not apply to this case. Defendants contend that the Court should automatically grant a new trial because the error in the verdict form was a

---

[88] *Id.* at p. 11.

[89] *Id.*

[90] *Id.* at pp. 11-12.

[91] *Id.* at p. 12.

"structural" one, not subject to harmless or plain error analysis.[92] Defendants cite the United States Supreme Court case in *Sullivan v. Louisiana*[93] in support of their position that the flawed jury verdict form amounted to the "[d]enial of the right to a jury verdict of guilt beyond a reasonable doubt" . . . "a 'basic protectio[n]' whose precise effects are unmeasurable, but without which a criminal trial cannot reliably serve its function."[94] Defendants thus contend that the Court must find that the "structural error" which occurred mandates a new trial. [95]

Alternatively, the Defendants assert that if the verdict form error complained of is found not to be a structural error, the court should still grant a new trial as the error affected the defendants' "substantial rights" even under a plain error analysis.[96] Defendants argue that, to show plain error, a defendant must show an error that is clear or obvious and that affects substantial rights.[97] If the defendant can make such a showing, it is argued, the Court has discretion to grant relief if it finds the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.[98]  Defendants argue that, in this case, the error did affect their substantial rights because there is a "reasonable probability that the jury felt constrained by the improper

---

[92]  Rec. Doc. 168 (Nero); Rec. Doc. 171 (Saunders adopting Rec. Doc. 168).

[93]  508 U.S. 275 (1993).

[94]  Rec. Doc. 168 at pp. 2-3.

[95]  *Id.* at p. 3.

[96]  Rec. Doc. 168 at p. 4 (citing *Puckett*, 556 U.S. 129, 135 (2009)).

[97]  Rec. Doc. 168 at p. 3 (citing *Puckett*, 556 U.S. at 135).

[98]  *Id.*

18

instruction" and due to "[t]he inability to know what the jurors thought was the correct standard or burden to return a 'not guilty' verdict . . . ."[99]

Defendants concede that the Supreme Court has not yet held in a case directly on point whether a structural error necessarily satisfies the third prong of the plain error standard,[100] but notes that "it has repeatedly indicated that structural error 'will always invalidate the conviction' because of its 'effect on the factfinding process at trial.'"[101]

With regard to Defendants' supplemental argument that the error is "structural" in nature, the United States responds that no structural error occurred here because the "inartfully worded verdict form" did not constitute an unconstitutional charge on reasonable doubt as in *Sullivan*. The United States responds that structural errors have been found by the Supreme Court in a very limited class of cases,[102] such as *Gideon v. Wainwright*[103] (complete denial of counsel); *Tumey v. Ohio*[104] (biased trial judge); *Vasquez v. Hillery*[105] (racial discrimination in selection of grand jury); *McKaskle v. Wiggins*[106] (denial of self-representation at trial); *Waller v. Georgia*[107] (denial of

---

[99] *Id.* at p. 4-5.

[100] *Id.* (citing *United States v. Marcus*, 130 S.Ct. 2159, 2164 (2010)).

[101] *Id.* at p. 3 (citing *Sullivan*, 508 U.S. at 279; *Washington v. Rescuenco*, 548 U.S. 212, 218 (2006)).

[102] *Id.* at p. 1 (citing *Neder v. United States*, 527 U.S. 1, 8 (1999); *Johnson v. United States*, 520 U.S. 461, 468 (1997)).

[103] 372 U.S. 335 (1963).

[104] 273 U.S. 510 (1927).

[105] 474 U.S. 254 (1986).

[106] 465 U.S. 168 (1984).

[107] 467 U.S. 39 (1984).

public trial); and, *Sullivan v. Louisiana*[108] (defective reasonable-doubt instruction). The United States distinguishes *Sullivan*, where the state district judge erred by instructing the jury with an unconstitutional definition of "reasonable doubt," by stating that, in this case, the "verdict form itself contained the proper verbiage from which the jury could extract 'guilty beyond a reasonable doubt' and the jury was instructed on 19 separate occasions on the correct burden of proof.[109] "Unlike the state district court in *Sullivan*, this Court made no such error, structural or otherwise. To the contrary, this Court correctly instructed the jury several times as to the proper constitutional standard of proof."[110]

### III. Law and Analysis

#### A. Verdict Form

Acknowledging that they failed to contemporaneously object to the error they now claim occurred, Defendants assert that this Court should find the error in the jury verdict form to be a "structural error," thus mandating a new trial without subjecting the error to "plain error" review.

The Government argues that the Defendants are limited to review of the error in the verdict form under "plain error" review pursuant to Fed. R. Crim. P. 52(b) because they failed to preserve their claims by objecting at trial.  Moreover, the Government counters that no "structural error" occurred as a result of an error in the jury verdict form.

---

[108]   508 U.S. 275 (1993).

[109]   Rec. Doc. 172 at p. 2.

[110]   *Id.* at p. 2.

Since the issue of whether a "structural error" has occurred as a result of using the jury verdict form is a threshold inquiry which impacts the Court's analysis of whether a new trial is warranted, the Court addresses Defendants' claim of structural error first.

### 1. Structural Error

The Defendants argue that the jury verdict form used by the jury when it rendered a finding of "guilty" on Counts 1-4 and 6, was structurally flawed in that the jury was required to find *either* guilt or innocence beyond a reasonable doubt.[111]  Each count in the verdict form was similarly formatted. For example, Count 1 was addressed as such:

<u>**Count 1 - Conspiracy to Commit Bank Robbery**</u>

As to the Charges set forth in Count 1 of the Indictment in this matter, we the Jury unanimously find beyond a reasonable doubt that the defendant, **LAMAR NERO** is:

\_\_\_\_\_Not Guilty_____Guilty

As to the Charges set forth in Count 1 of the Indictment in this matter, we the Jury unanimously find beyond a reasonable doubt that the defendant, **MYRON SAUNDERS** is:

\_\_\_\_\_Not Guilty_____Guilty[112]

As the United States has highlighted, the Court consulted the parties about this verdict form and solicited any objections as to its form and content before it was given to the jury. The Defendants admit, they failed to voice an objection.

First, after conducting a charge conference and inquiring if there were any objections to the verdict form, the Court questioned the parties about the verdict form, as follows:

---

[111]  Rec. Doc. 140-1 at p. 2.

[112]  *See* Verdict Form, Rec. Doc. 134-3.

> Court: Have you got it all? Is that it? So the Court notes any objections [to the jury instructions and verdict form]. I think we have addressed all objections, so the charge conference is concluded.[113]

The Court then read the verdict form as to the first count and asked counsel if they wanted the Court to go through every count or if that was sufficient.[114] Neither defendant raised an objection to the verdict form at that time.[115] The Court notes this as an indication that it is only with hindsight and after significant scrutiny that Defendants' argument relative to the structure of the verdict form even became apparent to them.

The objections Defendants now make were never raised at trial, despite the several opportunities this Court gave the parties to provide input.  This fact is important to note because the Supreme Court has determined that even serious constitutional errors can be forfeited by a defendant's failure to object. "'No procedural principle is more familiar to this Court than that a constitutional right,' *or a right of any other sort*, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'"[116]  "A party generally may not assign error to a jury instruction if he fails to object before the jury retires or to 'stat[e] distinctly the matter to which that party objects and to the grounds of the objection.'"[117]  Such timeliness and specificity requirements "enable a trial court

---

[113] Rec. Doc. 145 at p. 35:13-16.

[114] Rec. Doc. 147 at pp. 29-30.

[115] *See id.*

[116] *U.S. v. Olano*, 507 U.S. 725, 731 (1993) (citing *Yakus v. United States*, 321 U.S. 414, 444 (1944) (emphasis added)).

[117] *Id.* (citing Fed. R. Crim. Pro. 30).

to correct any instructional mistakes before the jury retires and in that way help to avoid the burdens of an unnecessary retrial."[118]

Nevertheless, Defendants argue that since the flawed jury verdict form impermissibly shifted the burden of proof in favor of the Government, the error is structural in nature and thus "not amenable to harmless error analysis."[119] Defendants rely on the United States Supreme Court case of *Sullivan v. Louisiana*,[120] in support of their position that the use of the flawed jury verdict form constitutes a structural error which requires this Court to grant the motion for new trial.

### a. Jurisprudence of Cases Involving Structural Error

In *Sullivan*, the defendant was charged with first degree murder committed during the course of an armed robbery.  In its instructions to the jury, the trial judge gave a definition of "reasonable doubt" that was identical to the instruction which the Supreme Court had previously found unconstitutional in *Cage v. Louisiana*.[121] The contested issue in *Sullivan*, however, was whether the constitutionally deficient reasonable doubt "*Cage* instruction" was subject to harmless error analysis. The Court found that it was not because the "misdescription of the burden of proof [ ] vitiates all the jury's findings," thus leaving a reviewing court to engage in "pure speculation" regarding what a reasonable jury would have done.[122] The Court held that the denial of a jury

---

[118] *Id.* at 387-88.

[119] Rec. Doc. 168 at p. 1.

[120] 508 U.S. 275, 278 (1993).

[121] 498 U.S. 39 (1990). The definition of reasonable doubt given in *Cage* lowered the government's burden of proof, suggesting that a higher degree of doubt was required for acquittal. *Id.* at 41.

[122] *Id.* at 2082.

verdict of guilt beyond a reasonable doubt is a "structural error"[123] that could not be assessed by making comparisons to the strength of the evidence presented at trial.[124]

In considering whether the error in this case is structural such that *Sullivan* and its progeny are applicable, the Court notes that *Sullivan* is distinguishable is several ways. First, procedurally, *Sullivan* was a direct appeal on a jury charge instruction issue that was objected to and preserved prior to the jury's deliberation.[125] Thus, appellate  review of the jury charge error in *Sullivan* was not limited to review under Fed. Rule Crim. P. Rule 52 (b)'s "plain error" review.  Here, the Defendants failed to object to the jury verdict form  prior to deliberation and did not raise the issue until the filing of the instant motion for new trial. While a structural error may not be amenable to harmless error review, "harmless error" is a rule of constitutional law, whereas "plain error" is a rule of appellate procedure.  Even an error "not susceptible to harmless error review is nevertheless susceptible to plain error review if the defendant did not object at trial."[126]

Second, the nature of the defect in *Sullivan* was substantively different than in the instant case.  The erroneous and constitutionally defective  jury instruction given in *Sullivan* was the *only* instruction given to the jury and it was one that impermissibly defined "reasonable doubt" in such a way as to lessen the government's burden of proof.  As a result, Justice Rehnquist noted in his concurrence that the jury had no choice but to "view[] the evidence from the lens of a defective

---

[123] The Supreme Court has defined a "structural" error to be a structural defect which "affect[s] the framework within which the trial proceeds, rather than simply [being] an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991).

[124] *Id.* at 282-83.

[125] *See United States v. Swatzie*, 228 F.3d 1278, 1283 (11th Cir. 2000) (*Sullivan* "structural error analysis" not controlling where jury charge not objected to prior to trial as *Sullivan* was not a "plain error" case).

[126] *Phipps*, 319 F.3d at 189.

reasonable-doubt instruction [thus] . . . there can be *no* factual findings made by the jury beyond a reasonable doubt . . ."[127]

By contrast, in this case the jury took the single flawed jury verdict form with them to deliberate *along with* individual copies of the jury charges and the preliminary jury instructions which *correctly* set forth the government's burden to establish guilt beyond a reasonable doubt.[128] The record establishes that the jury received correct instruction from the Court regarding the proper constitutional standard of proof beyond a reasonable doubt on nineteen separate occasions (8 times in the preliminary jury instructions[129] and 11 times in the final jury charges.)[130] Defendants acknowledge that the jury was properly instructed by the Court but claim that the proper jury instructions cannot "cure" the obvious error present in the jury verdict form. Defendants caution that the Court cannot assume that the jury followed the correct instruction and disregarded the flawed verdict form.

However, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation."[131]  The question is "'whether the ailing instruction. . . so

---

[127]  *Sullivan*, 508 U.S. at 283 (Rehnquist, J., concurring).

[128]  Although the Government argues that a jury verdict form cannot be equated with a jury instruction, the Court accepts that a jury views the jury verdict form as a type of instruction. Thus the Court finds it entirely appropriate to consider the verdict form in conjunction with the jury instructions and the trial record as a whole. *See United States v. Riccio*, 529 F.3d 40 (1st Cir. 2008) ("[W]e view the [verdict] form as a whole, in conjunction with the jury instructions, in order to determine whether the issues were fairly presented to the jury"); *United States v. Reed*, 147 F.3d 1178, 1180 (9th Cir. 1998) ("Verdict forms are, in essence, instructions to the jury"). Moreover, other courts that have been confronted with errors in jury verdict forms have considered the verdict form *in conjunction with* the instructions given by the court in determining whether a reversible error has occurred in a defendant's trial. *See e.g., United States v. Cardinas Garcia*, 596 F.3d 788 (10th Cir. 2010); *United States v. Rodriguez*, __ F.3d __, 2103 WL 4346686 (1st Cir. 2013).

[129]  Rec. Doc. 144, pp. 5-19.

[130]  Rec. Doc. 147, pp. 4-5, 11, 13, 16, 20-22, 24-25, 27-28.

[131]  *Middleton v. McNeil*, 541 U.S. 433, 437 (2004).

infected the entire trial that the resulting conviction violates due process.'"[132] Furthermore, a single jury instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.[133] "[T]he proper inquiry is not whether the instruction 'could have' been applied unconstitutionally, however, but whether there is a reasonable likelihood that the jury *did* so apply it."[134]

Here, the Court finds it unlikely that the instruction was applied in an unconstitutional manner.  First, unlike the case in *Sullivan*, the jury was *not* provided with an unconstitutional jury charge that incorrectly defined the concept of reasonable doubt without other correct instruction. Moreover, the error challenged here did not "vitiate" the jury's findings because the jury did, in fact, make findings beyond a reasonable doubt that the Defendants were "guilty" on Counts 1-4 and 6, and, notably, found the Defendants not guilty on Count 5.  In reaching its decision on Counts 1-4 and 6, the jury is presumed to have followed the instructions given to them, *including the ones provided in the jury verdict form relative to a finding of "guilty"* as to each count, *beyond a reasonable doubt*.[135]  Nothing in the verdict form remotely suggested that if the jury could not find the defendants "not guilty" beyond a reasonable doubt then the jury must elect to find them "guilty" by default.

The Court also finds it unlikely that the jury required the Defendants to prove their innocence as to any count charged.  The jury was repeatedly told that the Defendants began the

---

[132]  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

[133]  *Cupp v. Naughten*, 414 U.S. 141, 147 (1973) (citing *Boyd v. United States*, 271 U.S. 104, 107 (1926)).

[134]  *Victor v. Nebraska*, 511 U.S. 1, 2 (1994) (citing *Estelle v. McGuire*, 502 U.S. 62, 72 & n. 4 (1991)) (emphasis in original); *see also Phipps*, 319 F.3d at 189-90.

[135]  The jury verdict form contained the proper standard for a finding of "guilty"; the incorrect language in the verdict form, if followed literally, was in the burden required to find the Defendants "not guilty."

trial with a "clean slate," were presumed innocent until proven guilty and were not required under the law to prove their innocence.[136] The fact that the jury actually found the Defendants "not guilty" on Count 5 supports an inference that the jury did not improperly apply the Court's instructions.[137]

Importantly, the Court finds no instance where *Sullivan* has been extended to the situation at bar.  In fact, the Supreme Court, since *Sullivan*, has made clear that structural errors are to be found only in a "very limited class of cases"  where  errors deprive defendants of "basic protections" without which "a criminal  trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair."[138]  For example, structural error has been found in *Gideon v. Wainwright*[139] (complete denial of counsel); *Tumey v. Ohio*[140] (biased trial judge); *Vasquez v. Hillery*[141] (racial discrimination in selection of grand jury); *McKaskle v. Wiggins*[142] (denial of self-representation

---

[136] For example, the jury was instructed:
> Indeed, the defendant is presumed by the law to be innocent. The defendants begin with a clean slate. The law does not require a defendant to prove his innocence or produce any evidence at all, and no inference whatsoever may be drawn from the election of a defendant not to testify.  Rec. Doc. 147 at p. 4:19-24.

[137] *See United States v. Acosta*, 763 F.2d 671 (5th Cir. 1985) (Acquittals on some counts . . . have been interpreted as supporting an inference that the jury sorted the evidence and considered it separately as to each count and each defendant.)

[138] *Neder v. United States,* 527 U.S. 1, 8-9 (1999) (citing *Rose v. Clark*, 478 U.S. 570, 579 (1986)).

[139]   372 U.S. 335 (1963).

[140]   273 U.S. 510 (1927).

[141]  474 U.S. 254 (1986).

[142]   465 U.S. 168 (1984).

at trial); *Waller v. Georgia*[143] (denial of public trial); and, *Sullivan v. Louisiana*[144] (defective reasonable-doubt instruction), as cited by the Government.  Moreover, in *Neder v. United States*, the Supreme Court recognized that there is a strong presumption that most constitutional errors are harmless rather than structural.[145]  Furthermore, in *United States v. Marcus*,[146] the Supreme Court found that,"'[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred' are not 'structural errors.'"[147]

The U.S. Fifth Circuit has addressed the issue of *Sullivan* structural error in *United States v. Sanders*.[148]  In *Sanders*, the Fifth Circuit was reviewing the following statement made to the jury panel during voir dire by the district court judge:

> The government does not have to prove the case, of course, beyond any doubt, just as it *does not need to prove a case beyond a reasonable doubt*; that is a case based upon reason as you apply your own reason to the evidence received in the case.[149]

Because Sanders had not objected to the error at trial, the issue was reviewed under the plain error review of Federal Rule of Criminal Procedure 52(b).  Sanders argued that when a constitutionally deficient reasonable doubt instruction is given, harmless error analysis was inapplicable, citing *Sullivan*.  The Fifth Circuit noted that, since the district court had properly instructed the jury on

---

[143]   467 U.S. 39 (1984).

[144]   508 U.S. 275 (1993).

[145]   *Id.* at 8 (citing *Rose*, 478 U.S. at 579).

[146]   560 U.S. 258, 130 S.Ct. 2159, 2166 (2010).

[147]   *Id.* (citing *Rose*, 478 U.S. at 579).

[148]   37 F.3d 632, 1994 WL 558844 (5th Cir. 1994) (unpublished).  *See* 5th Cir. R. 47.5.3.

[149]   *Id*. at *1.

the government's burden of proof in its other jury instructions, the court did not review the one misstatement of the government's burden of proof in isolation but rather the court would view the proceedings as a whole. [150] Viewing the district courts' erroneous definition of the government's burden of proof in juxtaposition with the correct jury charges provided, the court concluded that Sanders had not met his burden of showing the alleged error had prejudiced the outcome of his case.  Moreover, even if prejudice could be shown, the court found that the fairness, integrity or public reputation of the proceedings were not seriously affected.[151]

### b.  Jurisprudence of Factually Similar Cases

Although the parties did not identify, nor could the Court find a factually similar case involving a verdict form in this Circuit, in *United States v. Phipps*,[152] the defendant challenged his conviction on the ground that during jury instructions, the district court had once inadvertently mentioned the preponderance of the evidence standard, which all parties conceded was erroneous in the criminal context.[153] The *Phipps* court found:

> Moreover, [the defendant] concedes that the general jury instruction on reasonable doubt, plus all other jury instructions, correctly stated the law. In the nearly identical case of *United States v. Musgrave*, 483 F.2d 327, 335 (5th Cir.1973), we affirmed a conviction despite a similar error, because the "[i]solated statements which appear prejudicial when taken out of context [were] innocuous when viewed in the light of the entire trial." During the jury charge in the instant case, the court correctly instructed, on fifteen occasions, on the meaning of reasonable doubt and its applicability.[154]

---

[150] *Id*. at 2.

[151] *Id*. at 2-3.

[152] 319 F.3d 177 (5th Cir. 2003).

[153] *Id.* at 189-90.

[154] *Id.* at 190 (internal footnote omitted) (some alterations in original).

The Fifth Circuit rejected the defendant's argument, based upon *Sullivan v. Louisiana*, that the error was not subject to plain error review and concluded that one isolated error in an otherwise correct jury charge was insufficient to warrant reversal.[155]

Additionally, the Court is also persuaded that any error in the jury verdict form did not impact the fairness of the Defendants' trial because a similar jury verdict error has occurred in other jurisdictions yet no prejudice was found.  In *United States v. Cardinas Garcia*,[156] a federal jury convicted the defendant of one count of possessing 500 grams or more of a mixture containing methamphetamine with intent to distribute.  The jury verdict form that was submitted to the jury, unobjected to by the parties, read as follows:

> We, the jury, duly impaneled and sworn in the above case unanimously find *beyond a reasonable doubt* as follows as to the indictment:
>
> On or about June 12, 2007, in the Northern District of Oklahoma, defendant, Luis Albert Cardinas Garcia, did knowingly and intentionally possess with the intent to distribute 500 grams or more of a mixture and substance containing methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii).
>
> NOT GUILTY _____                              GUILTY _____

Reviewing the jury verdict form for plain error, the court rejected the defendant's argument that the verdict form had erroneously shifted the burden of proof by implying that Cardinas was required to prove his *innocence* beyond a reasonable doubt and by failing to make clear that only the government carried the burden of proof regarding his guilt. [157] Finding the jury verdict form

---

[155] The error in *Phipps* was not objected to at trial and therefore was reviewed for "plain error" on appeal. *Id.* at 189.

[156] 596 F.3d 788 (10th Cir. 2010).

[157] *Sullivan v. Louisiana* was not specifically  argued in support of structural error before the *Cardinas Garcia* court.

to be a "plain error" in that the form contained an incorrect statement of the law, the court found the error did not require reversal.  The court concluded that the jury verdict form did not affect Cardinas' substantial rights because the district court had repeatedly emphasized the correct burden of proof to the jury and there was no evidence that the jury, reading the instructions as a whole, was confused regarding the burden of proof.  The court also noted several other decisions with similar facts regarding jury verdict errors where the courts also upheld the convictions.[158]

Similarly, in *United States v. Rodriquez*,[159] a verdict form requiring that the jury find the defendants either guilty or *not guilty,* beyond a reasonable double, was used for each count of a five count drug trafficking indictment.[160] No objection was filed prior to jury deliberations. Although finding the jury verdict form was clearly flawed with possible constitutional implications, citing *Sullivan v. Louisiana*,[161] and *In re Winship*,[162] for the proposition that a defendant's guilt must be proven beyond reasonable doubt, the court found the defendants could not meet the "high hurdle" of establishing that the error affected their substantial rights.[163]  The court explained, "Although the verdict form contained language suggesting that innocence had to be proven beyond a reasonable doubt, it also instructed that the jury could only find guilt if it found so beyond a reasonable doubt.  In addition . . . the jury instructions as to each specific count

---

[158] *Cardinas*, 596 F.3d at 800 n. 5 (citing *United States v. Bustos*, 303 Fed. Appx. 656, 663-64 (10th Cir. 2008); *United States v. Edwards*, 215 Fed. App'x. 417, 420-21 (6th Cir. 2007); *United States v. Vogel*, 1994 WL 5569994, at *9 (4th Cir. Oct. 12, 1994)).

[159] 2013 WL 4346686 *7-8 (1st Cir., Aug. 16, 2013).

[160] *Id.* at 7.

[161] 508 U.S. at 277.

[162] 397 U.S. 358, 364 (1970)

[163] *Rodriguez*, 2013 WL 4346686 at *8.

were also unambiguous about the showing necessary to support a guilty verdict."[164]  Accordingly, the court concluded that the defendants could not show that a new trial was warranted.[165]

In yet another case, *Schlee v. Williams*,[166] the Court upheld a state prisoner's conviction on federal habeas where the jury verdict form read:

We, the jury, find, beyond a reasonable doubt, the defendant, Larry M. Schlee,

_____ (Insert in ink: "Guilty" or "Not Guilty") of Aggravated Murder.

Although the state appellate court had concluded that the verdict form was "erroneous on its face,"  the federal habeas court rejected the defendant's claim of "structural error" and found that the "miswording of the verdict form did not alter the burden of proof" when viewed in conjunction with properly worded jury charges.[167]  Although not specifically citing *Sullivan*, the court stated,

[T]his error does not 'defy analysis by harmless error standards.'  In fact, it is completely possible to examine the entire jury instruction to determine whether the jury was properly instructed regarding the state's burden of proof of guilt beyond a reasonable doubt. When that analysis is performed, it is clear that any defect in the verdict form was harmless error.

Considering the cases cited above regarding structural error as well as those cases where similar jury verdict errors were made but prejudice could not be shown, this Court finds that the

---

[164] *Id.* at *9.

[165] *Id.*

[166] __ F. Supp. 2d __, 2010 WL 777156 *12-14 (N.D. Ohio Mar. 8, 2010).

[167] *Id.*

error in the jury verdict form did not amount to a "structural error" as "any confusion created by the verdict form was clarified when considered in light of the entire jury instruction."[168]

## 2. Review Under Federal Rule of Criminal Procedure 33

### a. Standard for Granting a New Trial under Rule 33

Federal Rule of Criminal Procedure 33 provides, in pertinent part, that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."[169] "In determining whether to grant the motion, the district court must carefully weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial, but must not entirely usurp the jury's function."[170] "In this Circuit, the generally accepted standard is that a new trial ordinarily should not be granted unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict."[171] "A new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant."[172] Further, "[a]lthough grant or denial of the motion [for new trial under Federal Rule of Criminal Procedure 33] is entrusted to the sound discretion of the [district court] judge, motions for new trial are not favored, and are granted only with great caution."[173]

---

[168] *See Jones*, 132 F.3d at 245.

[169] Fed. R. Crim. P. 33(a).

[170] *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005) (internal citations and quotations marks omitted).

[171] *United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2011) (internal quotation marks omitted).

[172] *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004).

[173] *Id.* at 474.

*i. Fifth Circuit's Opinion in United States v. Wall*

In its 2004 decision in *United States v. Wall*, [174] the Fifth Circuit examined the framework for addressing a motion for new trial pursuant to Rule 33. Looking first at the language of the Rule itself, the court explained that "Rule 33 permits the district court to vacate judgment and grant a new trial 'if the interest of justice so requires,'"[175] and it then cited the Eighth Circuit's decision in *United States v. McBride*[176] for the proposition that "the interest of justice standard 'requires the district court to balance the alleged errors against the record as a whole and evaluate the fairness of the trial." The Fifth Circuit further elaborated that "Rule 33 divides motions for new trial based on the interest of justice into two different subcategories: (1) motions based on newly discovered evidence; and (2) motions based on 'other grounds.'"[177]

Turning to its prior precedent, the Fifth Circuit explained that "[g]enerally, this court has held that the trial court should not grant a motion for a new trial unless there would be a miscarriage of justice or the weight of the evidence preponderates against the verdict."[178] It further instructed that "[a] new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant."[179]

---

[174]   389 F.3d 457 (5th Cir. 2004).

[175]   *Id.* at 466.

[176]   862 F.2d 1316, 1319 (8th Cir. 1988).

[177]   *Wall*, 389 F.3d at 466.

[178]   *Id.* (citing *United States v. O'Keefe*. 128 F.3d 885, 898 (5th Cir. 1997)).

[179]   *Id.* (citing *United States v. Rasco*, 123 F.2d 222, 228 (5th Cir. 1997)).

### ii. Fifth Circuit's Opinion in United States v. Scroggins

The Fifth Circuit also had an opportunity to address Rule 33 in another 2004 decision, *United States v. Scroggins*.[180] In *Scroggins*, the Fifth Circuit vacated the district court's denial of defendant's Rule 33 motion because "the district court erred in limiting its analysis of the motion . . . to newly discovered evidence while not considering the primary basis for Scroggin's motion—the interest of justice."[181] In remanding the case to the district court for further analysis on whether the "interests of justice" warranted a new trial, the Fifth Circuit explained that "[a] district court may grant a new trial where is 'finds that a miscarriage of justice may have occurred at trial.'"[182] The court further advised that "the district court's discretion to grant a new trial, although broad, is not without bounds."[183] Specifically, the Fifth Circuit noted Wright and Miller's instruction that "[t]he court has discretion in passing on the [new trial] motion, but it should hold in mind the harmless and plain error provisions of Rule 52, and *refuse to grant a new trial if the substantial rights of the defendant were not affected*."[184]

### b. Application of Rule 33 to the Pending Matter

As discussed in the sections that follow, in determining whether the interest of justice requires that the Court exercise its discretion to grant a new trial, a number of considerations bear

---

[180] 379 F.3d 223 (2004).

[181] *Id.* at 254.

[182] *Id.* at 255.

[183] *Id.* at 256.

[184] *Id.* (quoting Charles Alan Wright et al., *Federal Practice and Procedure* § 551 (3d ed., 2004)) (emphasis in original).

on whether the failure to grant a new trial would result in adverse effects on the substantial rights of the defendants or in a miscarriage of justice.

### i. Clarification of the Law Provided by the Court

The Court provided numerous instructions to the jurors throughout the entire trial process about the heavy burden the government was required to carry in order to secure convictions on each count in the indictment. After the jury was selected, the Court gave the following instruction on this point of law:

> 1. First, the defendant is presumed innocent until proven guilty. The indictment brought by the government against the defendant is only an accusation, nothing more. It is not proof of guilt or anything else. The defendant, therefore, starts out with a clean slate.
>
> Second, the burden of proof is on the government until the very end of the case. The term "burden of proof" or sustaining its burden of proof means the obligations of proving its case in this trial, the government's obligation to produce proof beyond a reasonable doubt of the charges in the superseding indictment that is brought. The defendant has no burden to prove his or her innocence or to present any evidence or to testify. Since the defendant has a right to remain silent, the law prohibits you from arriving at your verdict by considering that the defendant may not have testified.
>
> Third, the government must prove the defendants' guilt beyond a reasonable doubt.[185]
>
> 2. Thus for a defendant to be found guilty of the conspiracy crime charged in Count 1, the government must prove each of the following beyond a reasonable doubt.[186]
>
> 3. For a defendant to be found guilty of this crime [charged in Count 2], the government must prove each of the following beyond a reasonable doubt.[187]
>
> 4. For a defendant to be found guilty of this crime [charged in Count 3], the government must prove each of the following beyond a reasonable doubt.[188]

---

[185] Rec. Doc. 144 at pp. 5-6.

[186] *Id.* at pp. 8-9.

[187] *Id.* at p. 11.

[188] *Id.* at p. 12.

36

5.  It is a crime for anyone to take from a person or the presence of someone by force, violence, or intimidation any money in the possession of a federally insured bank. For a defendant to be found guilty of this crime, the government must prove each of the following beyond a reasonable doubt.[189]

6. For a defendant to be found guilty of attempting to commit bank robbery, the government must prove each of the following beyond a reasonable doubt.[190]

7. No defendant is required to make an opening statement but may do so if he chooses. He may choose not to do so and *rest upon the presumption of innocence* to which he is entitled. As I pointed out to you earlier, *each defendant is presumed innocent until proven guilty beyond a reasonable doubt.*[191] (emphasis added)

8. The burden is always on the government to prove every element of the offenses charged beyond a reasonable doubt. The law never imposes on any defendant in a criminal case the burden of calling any witnesses or introducing any evidence.[192]

Moreover, in the final jury charges, the Court again reiterated this point of law a myriad

of times:

1. The government has the burden of proving the defendants guilty beyond a reasonable doubt, and if it fails to do so as to either defendant, you must acquit that defendant.[193]

2. You will note that the indictment charges that the offense was committed on or about a specified date. The government does not have to prove the crime was committed on the exact date so long as the government proves beyond a reasonable doubt that the defendant committed the crime on a date reasonably near the date stated in the indictment.[194]

---

[189] *Id.* at p. 14.

[190] *Id.* at p. 15.

[191] *Id.* at p. 18.

[192] *Id.* at p. 19.

[193] Rec. Doc. 147 at pp. 4-5.

[194] *Id.* at p. 11.

3. You are here to decide whether the government has proved beyond a reasonable doubt that the defendants are guilty of the crime charged.[195]

4. If, after examining all of the testimony and evidence in the case, you have a reasonable doubt as to the identity of the defendant as the perpetrator of the offense charged, you must find the defendant not guilty.[196]

5. Thus for you to find a defendant guilty of the conspiracy crime charged in Count 1, you must be convinced that the government has proved each of the following beyond a reasonable doubt.[197]

6. For you to find a defendant guilty of this crime [charged in Count 2], you must be convinced that the government has proved each of the following beyond a reasonable doubt.[198]

7. For you to find a defendant guilty of this crime [charged in Count 3], you must be convinced that the government has proved each of the follow[ing] beyond a reasonable doubt.

8. As I previously explained, for you to find a defendant guilty of this crime [charged in Count 4], you must be convinced that the government has proved each of the following beyond a reasonable doubt.[199]

9. For you to find a defendant guilty of attempting to commit bank robbery, you must be convinced that the government has proved each of the following beyond a reasonable doubt.[200]

10. For you to find the defendant guilty of aiding and abetting bank robbery, you must be convinced that the government has proved each of the following beyond a reasonable doubt.[201]

---

[195] *Id.*

[196] *Id.* at p. 13.

[197] *Id.* at p. 16.

[198] *Id.* at pp. 20-21.

[199] *Id.* at p. 24.

[200] *Id.* at p. 25.

[201] *Id.* at p. 27.

38

11. Remember at all times, you are judges; judges of the facts. Your duty is to decide whether the government has proved the defendants' guilt beyond a reasonable doubt.[202]

Considering these instructions and reading the instructions as a whole in conjunction with the erroneous jury verdict form, and considering the evidence as a whole as presented at trial,[203] this suggests that the substantial rights of the Defendants were protected and the outcome of trial, i.e., the jury's verdict, was not adversely affected by the error in the jury verdict form.

## ii. Jurisprudence of Similar Cases

As discussed above, the Court has reviewed factually similar cases in which the jury was provided with erroneous instruction in the jury verdict from, yet the convictions were upheld. Without completely reviewing these cases, the Court notes that in *United States v. Cardinas Garcia*, for example, the Tenth Circuit held that a jury verdict form, which may have implied that the defendant was required to prove innocence beyond a reasonable doubt, did not impact the defendant's substantial rights.[204] Similarly, in *United States v. Rodriquez*, the First Circuit held that a verdict form requiring that the jury find the defendants either guilty or not guilty beyond a reasonable doubt did not warrant a new trial.[205]

## iii. Character of the Jury

In exercising its broad discretion under Federal Rule of Criminal Procedure 33 to determine whether "the interests of justice" require a new trial, this Court would be remiss if it

---

[202]  *Id.* at p. 28.

[203]  The Government presented more than 30 witnesses and 40 exhibits at trial. The Government outlined in detail the evidence presented in its opposition brief. Rec. Doc. 157 at pp. 3-4.

[204]   596 F.3d at 800.

[205]  2013 WL 4346686 at *9.

ignored the nature of the jury panel itself.  The Court notes that this particular jury was especially attentive and involved throughout the trial.  Moreover, the jury asked numerous questions throughout the process, albeit not always regarding the substantive issues in the case.[206] Put simply, this was not a shy jury. If they had any questions or confusion about the verdict form in relation to the jury instructions, which they took with them to deliberate, this Court is confident they would have asked the Court for clarification.

### iv. Federal Rule of Criminal Procedure 52 Principles

As noted above, in *Scroggins*, the Fifth Circuit cited Wright and Miller's instruction that in deciding a motion pursuant to Rule 33, a court "should hold in mind the harmless and plain error provisions of Rule 52, and *refuse to grant a new trial if the substantial rights of the defendant were not affected.*"[207]

Under the Rule 52, plain error review is very limited. It permits recognition of an error not raised at trial only where:  (1) the error is plain, i.e., "clear or obvious" rather than subject to reasonable dispute, (2) the error affects the [defendant's] *substantial rights*, and (3) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[208]

In applying Rule 52(b) to this case, the Court easily finds that the first prong is met considering there is no dispute that the jury verdict form contained a plainly visible flaw:  by suggesting that the Defendants had the burden of proving their innocence, the verdict form was

---

[206] *See* Rec. Doc. 134-4 (jury questions) (filed under seal).

[207] *Scroggins*, 379 F.3d at 256 (quoting Charles Alan Wright et al., *Federal Practice and Procedure* § 551 (3d ed., 2004)) (emphasis in original).

[208] *Olano*, 507 U.S. at 732–736 (emphasis added); *see also Puckett v. United States*, __ U.S.__, 129 S.Ct. 1423, 1429 (2009); *Johnson v. United States*, 520 U.S. 461, 466–467 (1997); *United States v. Marcus*, 560 U.S. 258 (2010); *Phipps,* 319 F.3d at 189.

clearly incorrect.  However, as discussed above, it does not appear that the error affected the Defendants' substantial rights, the second prong of the test, and because the Court finds that Defendants' substantial rights were not adversely affected, the court need not address the third prong of the "plain error" test.[209]

In sum, based on the specific facts of this case and for all the reasons outlined above, the Court does not find that the verdict form affected Defendants' substantial rights or caused a miscarriage of justice which would warrant a new trial.[210]

## B.  Improper Statements by Prosecutor During Rebuttal

Defendants argue that AUSA McSherry violated their rights because he "asserted his personal opinion regarding the credibility of a witness," and he spoke directly to the defendants in a manner "that incited the passions of the jury."[211]  Improper comments by a prosecutor constitute reversible error sufficient to justify a new trial where the defendant's "right to a fair trial is substantially affected."[212]  "In determining whether [a] prosecutor's remarks affected a defendant's substantial rights, the trial court should consider (1) the magnitude of the prejudicial effect of the statements; (2) the efficacy of any cautionary instructions; and (3) the strength of the evidence of defendant's guilt."[213]  "When analyzing the impropriety of prosecutorial comments, the central issue for this court is "whether the prosecutor's remarks cast serious doubt on the

---

[209]  *See Olano*, 507 U.S. at 742.

[210]  *See Wright*, 634 F.3d at 775.

[211]  Rec. Doc. 140-1 at p. 2.

[212]  *United States v. Mendoza*, 522 F.3d 482, 491 (5th Cir. 2008).

[213]  *Wall*, 389 F.3d at 474 (citing *United States v. Cardenas*, 778 F.2d 1127 (5th Cir. 1985))

41

correctness of the jury's verdict."[214] This step sets a high bar."[215] The effect of a prosecutor's remarks is evaluated in the context of the trial as a whole.[216]

### 1. *Magnitude of Prejudicial Effect*

Defendant's argue that AUSA McSherry essentially vouched for the credibility of a witness, Ms. Alvis, by indicating to the jury that "we know" Ms. Alvis was mistaken about the date (November 5) she reported seeing the Defendants because "we know" the Defendants were robbing the Fidelity Bank on November 5th.[217] The record shows that neither Defendant objected to AUSA McSherry's remarks at the time the rebuttal argument was made.

"A prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence."[218] "The test for improper vouching for the credibility of a witness is 'whether the prosecutor's expression might reasonably lead the jury to believe that there is other evidence, unknown or unavailable to the jury, on which the prosecutor was convinced of the accused's guilt.'"[219] Here, the prosecutor's repeated use of the term "we know" could have been viewed by the jury as either the prosecutor's own personal vouching for the witness or as the prosecutor having knowledge of evidence to which the jury was not privy. Absent some evidentiary basis for his conclusions, AUSA McSherry's statements could be considered improper prosecutorial "testimony."

---

[214] *United States v. Gracia*, 522 F.3d 597, 603 (5th Cir. 2008) (citing *United States v. Holmes*, 406 F.3d 337, 356 (5th Cir. 2005)).

[215] *United States v. Rashad*, 687 F.3d 637, 643 (5th Cir. 2012) (internal citations and quotation marks omitted).

[216] *Mendoza*, 522 F.3d at 492.

[217] Defendants' specifically reference Rec. Doc. 146 at p. 49:12-19.

[218] *Mendoza*, 522 F.3d at 491.

[219] *United States v. McCann*, 613 F.3d 486 (5th Cir. 2010).

42

However, as AUSA McSherry made these remarks, he also referenced the physical evidence (videotapes) from which reasonable inferences could be drawn to support the argument being made that the Defendants were instead robbing Fidelity Bank on November 5th.[220] The Fifth Circuit has found that a prosecutor's comments that voice an opinion, when directly linked to the evidence presented at trial, are insufficient to prejudice a defendant before a jury.[221]  Moreover, a prosecutor may "present what amounts to a bolstering argument if it is specifically done in rebuttal to assertions made by defense counsel in order to remove any stigma cast upon him or his witnesses."[222]  Similarly here, during closing argument, counsel for both Defendants attempted to discredit the testimony of Ms. Alvis.[223]  Considering the  magnitude of the prejudicial effect of such comments within the context of the full trial, the Court does not find the comments were improper.

## 2. The Efficacy of Cautionary Instructions

Additionally, the Court considers the instructions given to the jury which might mitigate any harm resulting from the prosecutor's comments.  Although the Court did not issue specific instructions concerning AUSA McSherry's rebuttal comments since no objection was made at that time, during preliminary and final instructions, the Court cautioned the jury that attorneys' statements were not evidence:

---

[220]  Rec. Doc. 146 at p. 49:8-11.

[221]  *See United States v. Thompson*, 482 F.3d 781 (5th Cir 2007) ("It is permissible [ ] for an attorney 'to make statements that indicate his opinion or knowledge of the case . . . if the attorney makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence'") (citation omitted).

[222]  *McCann*, 613 F.3d at 495 (citation omitted).

[223]  Rec. Doc. 146, pp. 26-29 (Mr. Capitelli); pp. 35-39 (Mr. Chaney).

Statements, arguments, and questions by lawyers are not evidence. While the evidence consists of the witnesses' answers to the lawyers' questions, the questions themselves are not evidence.[224]

....

The questions, statements, objections, and arguments made by the lawyers are not evidence. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case and in so doing to call your attention to certain facts or inferences that might otherwise escape your notice. In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in the case. What the lawyers say is not binding upon you.[225]

Additionally, based on the jury's "not guilty" verdict with respect to Count 5, the Court finds that these instructions, among others, proved efficacious in eliminating any potential prejudice that could have been caused by AUSA McSherry's statements now at issue.

### 3. The Strength of the Evidence Against Defendants

The Court must also consider the strength of the evidence that the Government presented against Defendants. While this Court was not the trier of fact at trial, Federal Rule of Criminal Procedure 33 requires the Court to "weigh the evidence" upon consideration of a motion for new trial.[226] However, in doing so, the Court must also be careful not to "entirely usurp the jury's function."[227] The Fifth Circuit has stated that "[t]he grant of a new trial is necessarily an extreme measure, because it is not the role of the judge to sit as a thirteenth member of the jury."[228]  Defendants argue that they were convicted based upon

---

[224] Rec. Doc. 144 at p. 4:1-4 (preliminary instructions).

[225] Rec. Doc. 147 at pp. 5-6 (final jury instructions).

[226] *See Tarango*, 396 F.3d at 672.

[227] *See id.*

[228] *O'Keefe*, 128 F.3d at 898 (citing *State v. Ladabouche*, 502 A.2d 852 (Vt. 1985)).

44

circumstantial evidence and primarily because of their association with one another.  In this case, however, the Government provided notable evidence at trial in the form of victim and eyewitness testimony, photographic and videotape evidence, DNA evidence as well as a significant amount of circumstantial evidence which pointed to the Defendants' guilt in the crimes charged.   As such, the Court finds no compelling reason to upset the jury's considered verdict upon the facts of this case.

## C.  Improper Gestures and Appeal to the "Passions of the Jury"

Defendants also complain that AUSA McSherry, in an attempt to appeal to the "passions of the jury," addressed the Defendants personally on numerous occasions and made aggressive hand gestures.[229]   A prosecutor is "not permitted to make an appeal to passion or prejudice calculated to inflame the jury."[230]

### 1. Magnitude of Prejudicial Effect

Again, the Defendants did not object during the rebuttal argument to the prosecutor's behavior. Moreover, Defendants cite no authority for their contentions that personally addressing defendants or using "aggressive hand gestures" incites the passion or prejudice of a jury. The Defendants do not contend that the gestures were prejudicial to any specific rights of the Defendants or that the prosecutor's actions in personally addressing them somehow cast them in an unfair or prejudicial light before the jury.

---

[229]  Rec. Doc. 140-1 at p. 7.

[230]  *United States v. Raney*, 633 F.3d 385 (5th Cir. 2011) (citing *United States v. Crooks*, 83 F.3d 103, 107 n. 15 (5th Cir.1996)).

Observing AUSA McSherry's advocacy at trial,[231] the Court cannot say that his hand gestures "appeal[ed] to [the] passion or prejudice calculated to inflame the jury."

### 2. The Efficacy of Cautionary Instructions

Since no objections were contemporaneously made by either Defendant to AUSA McSherry's behavior, no curative instruction could be given by the Court. However, the same general instruction was given to the jury as noted above, instructing the jury that the arguments of the attorneys were not evidence to be considered.

### 3. The Strength of the Evidence Against Defendants

Again, the Government's evidence consisted of nearly thirty witnesses and a presentation of over forty exhibits. The amount of evidence presented to show Defendants' guilt militates against a finding that the Government's rebuttal argument adversely affected the Defendants' rights to a fair trial.

With no evidence to establish that the Defendants' substantial rights were affected by the prosecutor's comments or behavior at trial, the Court finds that "the interest of justice" standard of Rule 33 will not be served by ordering a new trial.

## D. Cumulative Error Doctrine

As a final ground for a new trial, Defendants invoke the cumulative error doctrine. The Fifth Circuit has concisely explained this doctrine:

> We have previously recognized the so-called cumulative error doctrine under which "an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair

---

[231] The Court does note that, at various points throughout the trial and always outside the presence of the jury, AUSA McSherry had to be reprimanded by the Court regarding his behavior. However, the Court does not find, in this fact-specific context, that his personally addressing the Defendants was inherently prejudicial or appealed to the passions or bias of the jury.

trial." *United States v. Munoz*, 150 F.3d 401, 418 (5th Cir.1999); *see United States v. Sepulveda*, 15 F.3d 1161, 1195–96 (1st Cir.1993) (explaining the cumulative error doctrine).[232]

"A claim of cumulative error is '*sui generis*;' [courts are to] evaluate the number and gravity of the errors in the context of the case as a whole."[233] In this case, the defendants have only established that there was an error made in the jury verdict form, albeit one the Court has found did not impair the substantial rights of the defendants. Additionally, had the Defendants objected to any of their claimed "errors" at the appropriate time, the Court would have been able to address any concern and provide a curative instruction, if necessary. Moreover, the acquittal of the Defendants on Count 5 of the indictment indicates to this Court that the jury carefully considered the evidence and was not confused by error or swayed by improper argument. As fully explained above, none of the Defendants' claimed "errors" have prejudicially impacted their substantial rights and there is no basis for this Court to find that, even when the alleged errors are considered in aggregate, the "interest of justice" was not served at trial.

### IV. Conclusion

The effect of the flawed verdict form did not constitute a structural error mandating a new trial. Moreover, neither the flawed verdict form nor the comments or actions of the prosecutor violated Defendants' substantial rights, when considered in the entire context of this case. Additionally, the Court finds that the cumulative affect of all the alleged errors cited by

---

[232] *United States v. Williams*, 264 F.3d 561, 572 (5th Cir. 2001).

[233] *Valencia*, 600 F.3d at 430 (citing *Sepulveda*, 15 F.3d at 1196).

47

Defendants similarly did not have an adverse effect on the fairness of the Defendants' trial.

Accordingly,

      **IT IS HEREBY ORDERED** that Defendants' "Motion for New Trial"[234] is **DENIED**.

      **NEW ORLEANS, LOUISIANA**, this  14th day of November, 2013.

                                       **NANNETTE JOLIVETTE BROWN**
                                       **UNITED STATES DISTRICT JUDGE**

**CLERK TO NOTIFY COUNSEL**

---

[234] Rec. Docs. 139, 140.